UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRANDON RAFFERTY,

    Plaintiff,

v.

GIANT EAGLE MARKETS, INC. et al.,

    Defendant.

Case No. 2:17-CV-617
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court upon Defendants' *Motion for Summary Judgment* (ECF No. 31), Plaintiff's *Memorandum in Opposition to Defendants' Motion* (ECF No. 35), and Defendants' *Reply in Support of its Motion* (ECF No. 37). For the reasons that follow, the Court **GRANTS** Defendants' Motion.

### I.

Defendant Giant Eagle hired Plaintiff Brandon Rafferty as a part-time Pharmacy Technician on October 22, 2010. (Pl.'s Dep. Tr. at 71, ECF No. 34). In April 2013, he moved to a full-time Pharmacy Technician (40 hours per week). *Id.* at 72. As a Pharmacy Technician, Mr. Rafferty's responsibilities included processing customer orders, locating products, assisting with questions concerning prescriptions, and assisting the pharmacists with data entry. *Id.* at 74–75, Ex. 3.

Giant Eagle terminated Mr. Rafferty on August 3, 2017. Giant Eagle attributes its decision to terminate Mr. Rafferty to his failure to be on time to work. Mr. Rafferty posits that he was unable to be on time to work because he has Attention Deficit Hyperactivity Disorder ("ADHD"). He alleges that his termination, and his treatment at work, was based on

discrimination because of his ADHD and in retaliation for opposing the discriminatory treatment.

There is no dispute that Mr. Rafferty was tardy 122 times before he was terminated. Additionally, it is undisputed that Mr. Rafferty was progressively disciplined for the late arrivals to work pursuant to Giant Eagle's attendance policy. *Id.* at 204, Ex. 13. That policy provides that an employee is considered late if he or she clocks in over three minutes after his or her scheduled start time. When employees are late, they are penalized 1/2 point toward a progressive discipline assessment. *Id.*

Under the policy, an employee who accumulates 4 points within a 90-day period will receive a written warning and will serve a 90-day probationary period; this is Step 1. *Id.* Step 2 provides that if an employee accumulates another 4 points during the 90-day probationary period, the employee is suspended for one day and a new 90-day probationary period begins. *Id.* If, during this second 90-day probationary period, the employee accumulates another 4 points, a 3-day suspension is issued and the 90-day probationary period begins anew; this is Step 3. *Id.* The fourth and final step dictates that, if during the third probationary period the employee accumulates another 4 points, the employee is immediately terminated. *Id.* If an employee does not call and does not report to work ("no call, no show"), the employee automatically receives an additional 4 points. *Id.* The level of discipline is reduced one step after the designated probation period has been met. *Id.*

Mr. Rafferty was late to work and received discipline pursuant to the attendance on the following occasions:

1. January 28, 2012 – Written Warning for Attendance. Plaintiff obtained 4 points for being tardy 8 times within a 90-day period. (Pl. Dep. Tr. at 208, Ex. 14) (showing tardy on: 11/8/11; 11/14/11; 12/9/11; 12/20/11; 1/9/12; 1/13/12; 1/21/12; and 1/22/12).

2. May 5, 2012 – One-Day Suspension for Attendance. Plaintiff obtained another 4 points when he was tardy 8 times within the probationary period following his January 2012 Written Warning. (*Id.* at 209, Ex. 15) (showing tardy on: 3/26/12; 4/1/12; 4/18/12; 4/20/12; 4/24/12; 4/26/12; 5/2/12; and 5/3/12).

3. August 28, 2012 – One-Day Suspension for Attendance. Plaintiff obtained another 4 points when he was tardy 8 times within the probationary period following his May 2012 One-Day Suspension. (*Id.* at 210, Ex. 16) (showing corrective actions taken on 1/23/12; 5/3/12; 8/29/12; and 12/12/12).

4. November 11, 2012 – Three-Day Suspension for Attendance. Plaintiff obtained another 4 points when he was tardy 8 times within the probationary period following his August 2012 One-Day Suspension. (*Id.* at 210, Ex. 16) (showing tardy on: 10/1/12; 10/8/12; 10/21/12; 10/25/12; 10/29/12; 11/2/12; 11/7/12; and 11/10/12).

5. April 27, 2013 – Three-Day Suspension for Attendance. Plaintiff obtained another 4 points when he was tardy 8 times within the probationary period following his prior suspensions. (*Id.* at 211, Ex. 17) (showing tardy on: 3/22/13; 4/1/13; 4/2/13; 4/5/13; 4/16/13; 4/18/13; 4/19/13; and 4/24/13).

6. December 29, 2013 – One-Day Suspension for Attendance. Plaintiff obtained 5 points when he was tardy 8 times and absent once ("no call, no show"). (*Id.* at 213, Ex. 18) (showing tardy on: 12/2/13; 12/5/13; 12/7/13; 12/12/13; 12/13/13; 12/16/13; 12/26/13; 12/28/13; and absent on 12/23/13).

7. June 19, 2014 – Written Warning for Attendance. Plaintiff obtained another 5 points when he was tardy 10 times. (*Id.* at 214, Ex. 19) (showing tardy on: 4/1/14; 4/15/14; 4/22/14; 4/24/14; 5/3/14; 5/12/14; 5/13/14; 6/2/14; 6/13/14; and 6/16/14).

8. July 14, 2014 – One-Day Suspension for Attendance. Plaintiff obtained another 4 points when he was tardy 8 times. (*Id.* at 215, Ex. 20) (showing tardy on: 6/27/14; 6/28/14; 6/30/14; 7/2/14; 7/3/14; 7/9/14; 7/10/14; and 7/11/14).

9. August 24, 2014 – Three-Day Suspension for Attendance. Plaintiff obtained 4.5 points when he was tardy 9 times. (*Id.* at 215, Ex. 21) (showing tardy on: 7/25/14; 7/26/14; 7/28/14; 7/29/14; 8/5/14; 8/6/14; 8/14/14; 8/22/14; and 8/23/14).

10. March 8, 2015 – Three-Day Suspension for Attendance. Plaintiff obtained another 4 points when he was tardy 8 times. (*Id.* at 216, Ex. 22) (showing tardy on: 12/5/14; 1/12/15; 1/15/15; 1/30/15; 2/13/15; 3/5/15; and 3/6/15).

11. July 1, 2015 – Termination for Attendance. Plaintiff accumulated 4 points when he was tardy 8 times. Mr. Rafferty was reinstated after he informed Giant Eagle he has ADHD and claimed his tardiness was due to his ADHD. (*Id.* at 219, Ex. 23) (showing tardy on: 4/4/15; 4/13/15; 4/20/15; 5/1/15; 5/2/15; 6/3/15; 6/26/15; and 6/30/15).

12. October 16, 2015 – One-Day Suspension for Attendance. Plaintiff obtained another 4 points when he was tardy 8 times. (Id. at 256, Ex. 31) (showing tardy on: 8/27/15; 9/2/15; 9/4/15; 9/14/15; 9/16/15; 10/2/15; 10/8/15; and 10/9/15).

13. December 28, 2015 – Three-Day Suspension for Attendance. Plaintiff obtained another 4 points when he was tardy 8 times. (Id. at 259, Ex. 32) (showing tardy on: 11/13/15; 11/16/15; 11/17/15; 11/30/15; 12/10/15/ 12/14/15; 12/16/15; and 12/23/15).

14. August 21, 2016 – One-Day Suspension for Attendance. Plaintiff obtained 5 attendance points when he was tardy 8 times and absent once. (Id. at 260, Ex. 33) (showing tardy on 6/2/16, 6/30/16, 8/9/16, 8/10/16, 8/12/16, 8/17/16, 8/18/16, and 8/20/16 and absent on 7/6/16).

15. November 6, 2016 – Three-Day Suspension for Attendance. Plaintiff obtained 4 attendance points when he was tardy 8 times. (*Id.* at 306, Ex. 37) (showing tardy on 9/29/16, 10/3/16, 10/13/16, 10/14/16, 10/18/16, 10/21/16, 10/28/16 and 11/2/16).

16. April 13, 2017 – Three-Day Suspension for Attendance. Plaintiff obtained 4 1/2 attendance points when he was tardy 9 times. (*Id.* at 309, Ex. 38) (showing tardy on 2/11/17, 2/28/17, 3/19/17, 3/24/17, 3/31/17, 4/2/17, 4/4/17, 4/11/17 and 4/12/17).

17. August 3, 2017 – Terminated for Attendance.

Each of the Counseling & Corrective Action Reports informed Mr. Rafferty that "Giant Eagle has an Employee Assistance Program," and that "if you are experiencing any personal issues that may be affecting your job performance we encourage you to consider contacting 'Life Resources.'" (*See, id., e.g*, Exs. 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 31, 32, 33, 37, and 38). The Reports also provide both a phone number and web address for more information. *Id.* On eleven of the disciplinary action reports that Mr. Rafferty received for attendance issues, this information was circled, highlighting his supervisors' desire to help with his continual attendance issues. *Id.*

Mr. Rafferty filed two EEOC Charges against Giant Eagle. The first Charge was filed on April 28, 2016 and alleged disability discrimination. The second charge was filed on March 17, 2017 and alleged retaliation. On July 14, 2017, Mr. Rafferty filed this action against Giant Eagle and Supervisor Amy Timmons (together referred to herein as "Giant Eagle"), which includes

5

claims under federal and state law for disability discrimination, failure to accommodate a disabled employee, hostile work environment, and retaliation.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

6

that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III.

Mr. Rafferty alleges that Giant Eagle violated the Americans With Disabilities Act, 42 U.S.C. § 12112 ("ADA") and Ohio Revised Code § 4112 when it (A) discriminated against him based upon his disability or a perceived disability, (B) failed to accommodate his disability, (C) permitted/created a hostile work environment based on his disability, and (D) retaliated against him for complaining about this alleged discrimination. As both parties acknowledge, Ohio disability discrimination law generally applies the same analysis as the ADA. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). "Accordingly, Ohio courts 'look to regulations and cases interpreting the [ADA] for guidance in [their] interpretation of Ohio law.'" *Johnson v. JPMorgan Chase & Co.*, 922 F. Supp. 2d 658, 666 n. 6 (S.D. Ohio 2013) (quoting *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573 (1998)). Consequently, in this case, both parties analyze Mr. Rafferty's claims under the ADA. The Court will do the same.

### A. Disability Discrimination

The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Where, as here, a plaintiff seeks to establish discrimination through indirect evidence, the plaintiff must establish a *prima facie* case, followed by the familiar *McDonnell Douglas* burden-shifting. *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973)).

7

To make out a *prima facie* case of ADA discrimination, a plaintiff must show that "1) she is an individual with a disability [or regarded as such]; 2) she is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) she suffered an adverse employment action because of her disability." *Barnum v. Ohio State Univ. Med. Ctr.*, 642 Fed. Appx. 525, 532 (6th Cir. 2016) (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)). "Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its actions." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (quoting *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)). "If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination." *Id.*

Giant Eagle moves for summary judgment on Mr. Rafferty's disability discrimination claim, arguing that he cannot set forth a *prima facie* case of discrimination because he cannot show that he is disabled, is otherwise qualified for the position, with or without reasonable accommodation, and/or that he suffered an adverse employment decision because of his disability. Giant Eagle further contends that even if Mr. Rafferty could meet his *prima facie* burden, it has offered legitimate nondiscriminatory reasons for its action, which Mr. Rafferty cannot show to be pretext for disability discrimination. Specifically, Giant Eagle maintains that, to the extent that the actions it took against Mr. Rafferty constitute materially adverse employment actions, it took them based upon Mr. Rafferty's tardiness/attendance problems.

Mr. Rafferty responds that he "has met the prima facie elements of his disability discrimination claims, and can establish that Defendants' purported basis for terminating

8

Rafferty's employment was pretextual." (Pl.'s Mem. in Opp. at 10, ECF No. 35.) This Court, however, disagrees.

The Court need not address whether Mr. Rafferty has made out his *prima facie* case of disability discrimination because Giant Eagle has met its burden of articulating a legitimate nondiscriminatory reason for its actions and Mr. Raffery has failed to produce any evidence that Giant Eagle's decisions to terminate or take any other employment action against him were a pretext for disability discrimination. Giant Eagle "need not *prove* a nondiscriminatory reason for [its actions], but need merely *articulate* a valid rationale." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 514 (1993)). Continued failure to arrive at work on time is a legitimate, nondiscriminatory reason for terminating an employee and, by articulating such a reason, Giant Eagle has met its initial burden under the *McDonnell Douglas/Burdine* framework.

Mr. Rafferty contends that he can rebut Giant Eagle's reason with evidence of pretext.

> Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons *did not actually motivate* the employer's action, or (3) that they were insufficient to motivate the employer's action. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004).
>
> To carry her burden in opposing summary judgment, [the plaintiff] must produce sufficient evidence from which a jury could reasonably reject [the defendant]'s explanation of why it fired her. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001)).

*Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (emphasis added). Mr. Rafferty asserts that "here, the second method applies." (Pl.'s Mem. in Opp. at 17, ECF No. 35.) In other words, he posits that a reasonable jury could conclude that Giant Eagle's proffered reasons for taking the employment actions – Mr. Rafferty's repeated tardiness – *did not actually motivate* the actions it took.

"For the second showing, where 'the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate [the adverse action],' the plaintiff must introduce evidence of discrimination to show pretext." *Guethlein v. Donahoe*, 1:09-CV-451, 2012 WL 3028509, at *8 (S.D. Ohio July 25, 2012), *report and recommendation adopted*, 913 F. Supp. 2d 480 (S.D. Ohio 2012), *aff'd sub nom. Guethlein v. U.S. Postmaster Gen.*, 550 Fed. Appx. 294 (6th Cir. 2014) (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)). That is,

> [t]he plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

*Manzer*, 29 F.3d at 1084.

Mr. Rafferty failed to introduce any evidence of pretext, let alone evidence that was weighted such that Giant Eagle's contention that it terminated Mr. Rafferty for repeated, consistent tardiness (122 late work arrivals) was more likely a pretext or coverup for discriminating against him based on his ADHD. "[W]hen the plaintiff argues that the defendant's reasons *did not actually motivate* the adverse employment action, the plaintiff must come forward with additional evidence of discrimination," *i.e.*, additional to the evidence proffered for his *prima facie* case. *Noble v. Brinker Intern., Inc.*, 175 F. Supp. 2d 1027, 1040 (S.D. Ohio 2001) (citing *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 346–47 (6th Cir. 1997)). Consequently, Mr. Rafferty has not raised any genuine issue of material fact as to whether Giant Eagle's legitimate nondiscriminatory reason for taking the complained-of employment actions are a pretext for disability discrimination.

A plaintiff in a disability discrimination case may offer evidence of similarly situated coworkers who were treated more favorably in an effort to raise a genuine issue of fact with regard to pretext under the second type of pretext showing. For an employer's proffered nondiscriminatory explanation to be shown as pretext on the grounds that a similarly situated employee received more favorable treatment, "the plaintiff is required to demonstrate that he or she is similarly situated to the non-protected employee in all relevant respects." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (internal quotation marks and citation omitted). Here, none of the coworkers about whom Mr. Rafferty testified on deposition constitute similarly situated coworkers for the present analysis.

Mr. Rafferty compares himself to Ethan Vires, whom Mr. Rafferty asserts is someone who was not always disciplined for absenteeism or tardiness. (Pl. Dep. Tr. 52, ECF No. 34). The evidence, however, shows otherwise. Mr. Vires was suspended seven times for absenteeism and tardiness, of which five were three-day suspensions. (Decl. of Kristen Frahlich[1] ¶ 7, ECF No. 31-1.) He also received written warnings two times for absenteeism and tardiness. *Id.* Therefore, the record evidence demonstrates that Mr. Vires was disciplined numerous times when he violated Giant Eagle's attendance policy and he was not treated more favorably than Mr. Rafferty. *Id.* The other potential comparators fare no better. There is no evidence before the Court of any employee who "engaged in misconduct of 'comparable seriousness.' *Harrison v. Metro. Gov't of Nashville*, 80 F.3d 1107, 1115 (6th Cir. 1996). *See also, Clayton v. Meijer, Inc.*, 281 F.3d at 611 ("The undisputed facts in this case demonstrate that Clayton's infraction was qualitatively more serious than those of his three coworkers. The employer's more severe

---

[1] Ms. Frahlich is a human resources business partner for Giant Eagle. (Decl. of Kristen Frahlich ¶ 1, ECF No. 31-1.)

11

treatment of more egregious circumstances simply cannot give rise to an inference which would support the establishment of a prima facie case of discrimination."); *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 378–79 (6th Cir. 2002) (explaining that because the plaintiff had "not made the necessary showing that similarly situated employees "engaged in misconduct of 'comparable seriousness'" the "evidence therefore has little probative value as to the question of whether her absenteeism problems were sufficient motivation for" the defendant's adverse employment action).

Accordingly, Mr. Rafferty has failed to raise any genuine issue of material fact for trial on his claim of disability discrimination. Thus, the Court **GRANTS** Giant Eagle's Motion for Summary Judgment on this claim.

**B.     Failure to Accommodate Disability**

"Discrimination under the ADA includes both (1) taking an adverse action 'against [a qualified individual] on the basis of disability' and (2) failing to make reasonable accommodations for the known limitations of an employee with a disability." *Johnson v. JPMorgan Chase & Co.*, 922 F. Supp. 2d 658, 666 (S.D. Ohio 2013) (quoting 42 U.S.C. §§ 12112(a), 12112(b)(5)(A)). "A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 2004 U.S. App. LEXIS 231, 2004 FED App. 0012P (6th Cir.), 93 Fair Empl. Prac. Cas. (BNA) 167, 84 Empl. Prac. Dec. (CCH) P41,562, 15 Am. Disabilities Cas. (BNA) (quoting *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-34 (6th Cir. 1998)). "An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship." *Id.* (citing *Cassiday*, 138 F.3d at 634).

12

Mr. Rafferty proposed one accommodation, a "set schedule," which he contends would prevent him from having issues arriving to work on time. Mr. Rafferty defines as set schedule as "day after day, working the same shift, starting time, ending time, not fluctuating at all whatsoever, that is a set schedule." (Pl. Dep. Tr. 161, 188, 270–71, ECF No. 34). Mr. Rafferty argues that Giant Eagle cannot prove that his requested accommodation is an undue hardship because, "such a claim is belied by the fact that Rafferty had a regular schedule for nearly five years before [Defendant Amy] Timmons became his manager, and no hardship ever befell Store 6537's pharmacy department." (Pls.' Mem. in Opp. at 19) (*id.* at 26) ("For nearly five years, Brandon Rafferty received a regular schedule with set hours."). Mr. Rafferty's arguments are not well taken.

First, the evidence shows that Mr. Rafferty had a set schedule for only approximately one year, *i.e.*, 2014:

> Q. So other than requesting the set schedule, did you suggest any other potential accommodations?
>
> A. Besides the set schedule, no. Me and HR talked about the timer thing, and I told them I already trying to work on that, and it doesn't really help, and I -- I felt since an accommodation was granted to me in the past, why it cannot be continued with more employees now than when, before, there was less employees, but still, an accommodation was able to be granted, meaning Laura give me a set schedule and that wasn't a problem. Change of management, now there's a problem.
>
> Q. How long do you think you got a set schedule?
>
> A. About a year.

(Pl. Dep. Tr. at 161–62.)

However, the undisputed evidence shows that during this year that Mr. Rafferty contends he had a set schedules, he was tardy 28 times, which led to a one-day and a three-day suspension. (Pl. Dep. Tr. 214–15, Exs. 19, 20, 21). Further, it is not disputed that Giant Eagle, where

13

possible, accommodated Mr. Rafferty's and other employees' scheduling requests. When Mr. Rafferty's requests, and those of his colleagues, were accommodated, it was not done pursuant to any ADA-related accommodation request. Pharmacy supervisors, including Defendant Timmons, tried to schedule the desired shifts of all employees. (Amy Timmons Dep. Tr. 41, ECF No. 31.) Yet, even while working the schedule requested, Mr. Rafferty still accumulated numerous disciplinary actions for being tardy. (*See, e.g.*, Pl. Dep. Tr. Exs. 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 31, 32, 33, 37, and 38). An accommodation that does not resolve the problem is not reasonable.

Third, Giant Eagle offered numerous other accommodations, which Mr. Rafferty rejected outright. For example, Giant Eagle repeatedly offered the use of FMLA leave, as well as the assistance of its Inclusion Specialist Katalyn Beavers. (Pl. Dep. Tr. at 175, 181, 182-185, 418).

Finally, when an employee requests an accommodation under the ADA, the employer must engage in an informal, interactive process with the employee with a disability in need of the accommodation. 29 C.F.R. § 1630.2(o)(3). In the instant action, there is no dispute that Giant Eagle appropriately engaged in the interactive process. Mr. Rafferty, however, did not. When Giant Eagle rescinded his termination because he informed them he had ADHD, it requested that his doctor provide a functional capabilities evaluation ("FCE"). Mr. Rafferty failed to do so. Indeed, the doctor from whom Mr. Rafferty requested the FCE wrote that he would "assume [Mr. Rafferty] could stand, sit, rollover and bark on command. Tell them [Giant Eagle] I said that exactly." (Pl. Dep. Tr. at 135, Ex. 9). Dr. Martin concluded by writing: "What the hell is with these people?" referring to Giant Eagle's request for an FCE pursuant to Mr. Rafferty's claim of disability and need for an accommodation. *Id.* Mr. Rafferty made no efforts to have another physician complete the form after Dr. Martin refused. (*Id.* at 141–42).

14

Consequently, Mr. Rafferty failed to meet his burdens of engaging in the informal interactive process with Giant Eagle and showing that his proposed accommodation was reasonable. Accordingly, no reasonable jury could find in Mr. Rafferty's favor on his failure to accommodate claim and Giant Eagle is entitled to judgment as a matter of law. The Court, therefore, **GRANTS** Giant Eagle's Motion for Summary Judgment on this claim.

## C.     Hostile Work Environment

To "maintain an action for a hostile work environment under the ADA, the employee must demonstrate that: (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." *Trepka v. Bd. of Educ.*, 28 Fed. Appx. 455, 460–61 (6th Cir. 2002) (citing *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997) (establishing the framework of proof under Title VII for sexual harassment); *Crawford v. Medina General Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (holding that the elements of a hostile work environment claim are the same across discrimination contexts)).

Conduct that can form the basis for a hostile work environment claim must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Conduct that is "merely offensive" will not suffice to support a hostile work environment action. *Id.* In determining whether a plaintiff has established that such an environment exists, the factfinder must consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

15

employee's work performance." *Id.* at 23. The touchstone of a hostile work environment claim is proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 21.

Mr. Raffety contends:

> Throughout the year following the disclosure of his ADHD to [Human Resources Partner] Frahlich and [Defendant] Timmons and his request for a regular schedule, Rafferty experienced persistent, severe harassment and disparate treatment. As an example, in or around April 2016, Timmons, angry with Rafferty, took him into a back room of the Pharmacy Dept. and yelled at him. (Doc. No. 31-4, 585-586). Rafferty felt very intimidated and afraid by Amy's actions towards him. (Doc. No. 31-2, PageID 319-320).

(Pls' Mem. in Opp. at 3, ECF No. 35.) Additionally, Mr. Raffety asserts that he was written up for violating the Finished Product Policy but another employee violated the policy and was not written up. And, Mr. Raffety maintains that he overheard another Pharmacy Technician tell "jokes" and comments about the number of prescriptions for ADHD medicine he was filling at a particular pharmacy location. *Id.* at 20–21.

The Court finds that this alleged conduct falls well short of the type of severe or pervasive conduct sufficient to alter the conditions of Mr. Raffery's employment and to create an abusive working environment. "The ADA is not 'a general civility code for the American workplace[.]'" *Mance v. Malco Products, Inc.*, 5:16CV1721, 2016 WL 5661619, at *2 (N.D. Ohio Sept. 30, 2016) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) and *Alsept v. Honda of Am. Mfg., Inc.*, No. 3:11–CV–395, 2013 WL 2417980, at *5 (S.D. Ohio June 3, 2013)). "It is not meant to prevent every comment that an employee might find offensive." *Id.*

Moreover, there is no evidence that the conduct about which Mr. Rafferty complains was undertaken because of Mr. Rafferty's alleged disability. The Sixth Circuit's "harassment jurisprudence requires that [the Court] distinguish between harassment and discriminatory harassment." *Trepka*, 28 Fed. Appx. at 461 (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000)). "Thus, an employee must demonstrate that the allegedly harassing conduct was motivated by a bias towards the employee's protected class." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)). There is no evidence on the basis of which a reasonable jury could determine that Giant Eagle acted because of Mr. Rafferty's alleged disability.

Thus, Mr. Rafferty has failed to raise any genuine issue of material fact as to his hostile work environment claim. Therefore, the Court **GRANTS** Giant Eagle's Motion for Summary Judgment on this claim.

**D.  Retaliation**

The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "The ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

In the absence of direct evidence of retaliation, a claim of retaliation under the ADA is analyzed using the familiar *McDonnell-Douglas* burden-shifting framework. *Id.* (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)). The plaintiff bears the initial

17

time to his protected activities. Temporal proximity alone, however, is usually not enough to show causation.

In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), the Sixth Circuit stated that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation." *Goree v. United Parcel Serv., Inc.*, 17-5139, 2017 WL 5664924, at *4 (6th Cir. Nov. 8, 2017). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (citing *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001)). "Based on this rule, the court found that temporal proximity demonstrated causation when the employer fired the employee the same day that the employer learned of the employee's EEOC charge." *Id.* (citing *Mickey*, 516 F.3d at 525–26). Thus, "unless immediate, temporal proximity must be 'coupled with other indicia of retaliatory conduct' to give rise to a causal inference." *McCoy v. Mv Residential Prop. Mgt., Inc.*, 2:14-CV-2642, 2016 WL 1392483, at *7 (S.D. Ohio Apr. 8, 2016) (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588–89, 595 (6th Cir. 2009)). Here, there is no other indicia of retaliatory conduct.

"Even were [Mr. Rafferty] was able to establish the elements of a *prima facie* case of retaliation, however, his claim would fail because, as discussed above, [Giant Eagle] offered a legitimate, non-discriminatory reason for [its employment actions]—his documented [attendance problems]—and [Mr. Rafferty] has failed to show that this reason is pretextual." *Block v. Meharry Med. College*, 723 Fed. Appx. 273, 283 (6th Cir. 2018) (citing *Laster v. City of*

19

*Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). Thus, Mr. Rafferty has failed to raise any genuine issue of material fact as to whether he can set forth a prima facie case of retaliation or whether Giant Eagle's actions were a pretext for retaliation. Accordingly, the Court **GRANTS** Giant Eagle's Motion for Summary Judgment on this claim.

### IV.

Based on the foregoing, the Court concludes that, even when believing Mr. Rafferty's evidence and drawing all justifiable inferences in his favor, no reasonable jury could find in his favor on any of his claims. The Court, therefore, **GRANTS** Defendants' *Motion for Summary Judgment*. (ECF No. 31.) The Clerk is **DIRECTED to ENTER JUDGMENT** accordingly.

**IT IS SO ORDERED.**

10-31-2018
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**